

ZACHARY W. CARTER
*Corporation Counsel*

**THE CITY OF NEW YORK**

**LAW DEPARTMENT**

100 CHURCH STREET, Rm. 3-155
NEW YORK, NY 10007

FRANK A. DELUCCIA
Assistant Corporation Counsel
Phone: (212) 356-5054
Fax: (212) 356-3559
fdelucci@law.nyc.gov

June 28, 2019

**BY ECF**
Hon. Nicholas G. Garaufis
United States District Judge
United States District Court
Eastern District of New York
225 Cadman East
Brooklyn, NY 11201

      Re:   <u>Pedro Cruz v. The City of New York, et al.</u>
            Docket # 18-CV-5584 (NGG)(RLM)

Your Honor:

      I am an Assistant Corporation Counsel in the Special Federal Litigation Division of the New York City Law Department, and the attorney assigned to the defense of the above-referenced matter on behalf of the defendants City of New York, Officer Ryan Smith, Sergeant Christopher Flaherty, and SSA John Todaro, (hereinafter, "Defendants"). I write pursuant to Your Honor's Individual Rules and the Initial Conference Hearing on February 5, 2019 to respectfully request a pre-motion conference in anticipation of Defendants' motion for summary judgment. A Case Management Conference is not currently scheduled in this matter.

<u>Factual Background</u>[1]

      Plaintiff brings this lawsuit pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights at approximately 8:15 P.M. on July 8, 2017 when plaintiff was pulled over and arrested near Richmond Terrace and Union Avenue in Staten Island, NY.

      Plaintiff was driving his 2017 Infiniti four door sedan with his friend in the passenger seat. The weather was clear and sunny on this evening. As some point prior to July 8, 2017, plaintiff voluntarily had dark tints of unknown percentage applied to all four side windows of his vehicle as well as to the rear windshield. Plaintiff admits he was informed upon receiving the tints that the specific tints he requested would not pass an inspection. Nevertheless, plaintiff chose to have the tints applied to his vehicle anyway. As plaintiff was driving his vehicle on

---

[1] The summary of facts is taken from the complaint, as well as relevant deposition testimony from plaintiff, contemporaneous police and court documents, and anticipated testimony from police officers.

July 8, 2017, he stopped at an intersection and prepared to turn when he noticed an unmarked police vehicle preparing to turn in front of plaintiff's vehicle. The side windows of plaintiff's vehicle were only slightly rolled down. Officer Smith noticed the tints because he could not see through the windows to see who was in the vehicle. Plaintiff observed the driver of the unmarked police vehicle waive his hand in a manner to indicate for plaintiff to make his turn first, which plaintiff did. Plaintiff was then informed by his passenger that the unmarked police vehicle was following plaintiff's vehicle. As a result, plaintiff made another left turn as soon as he possibly could to see whether the unmarked police vehicle was in fact following his vehicle.

As plaintiff drove and made the second left turn, the police officers again noticed the dark tints on plaintiff's vehicle and pulled plaintiff's vehicle over. As Officer Smith and Officer Joseph Perfetto, both in plain clothes, approached plaintiff's vehicle on foot, plaintiff's passenger exited the vehicle without warning in an attempt to leave. Officer Perfetto stopped plaintiff's passenger from fleeing and the two stood next to the open front passenger door of plaintiff's vehicle while Officer Smith approached plaintiff on the driver's side of the vehicle. Plaintiff immediately began to argue with Officer Smith regarding why he was pulled over, but eventually provided his license and information. To do so, plaintiff opened the glove box of his vehicle. Inside the glove box was a black folding knife that Officer Perfetto observed while standing next to the open front passenger side door of plaintiff's vehicle. Plaintiff admits that he purchased this knife, believes the knife to be a weapon, and kept it in his vehicle.

While Officer Smith verified plaintiff's information, the officers separately confirmed that plaintiff's passenger had an active warrant for his arrest. Officer Smith returned plaintiff's information and prepared to allow plaintiff to drive away. However, when the officers attempted to apprehend plaintiff's passenger, the passenger verbally refused and sat back into the vehicle containing the knife to avoid and resist his arrest. As the passenger did so, he used his feet and arms to brace himself in the vehicle to avoid being removed. The vehicle was running throughout this entire incident and plaintiff was seated in the driver's seat of the vehicle.

Additional officers arrived while the officers continued to attempt to remove plaintiff's passenger from the vehicle. The officers removed plaintiff from the vehicle by opening the door and using his arm to pull him from the vehicle as other officers removed plaintiff's passenger from the vehicle. Plaintiff was placed on the ground momentarily to be handcuffed while shouting profanities, then removed from the scene and to the 121st Precinct. Plaintiff's passenger was handcuffed and separately removed. The officers recovered the knife from plaintiff's glove box. Officer Smith was successfully able to open the knife using centrifugal force with a flick of his wrist. The knife has a knob on the blade and a lever that locks the blade into place once opened. Plaintiff's vehicle was removed to the precinct, where the tints on his front and rear windows were measured to be less than the allowable legal limit. Plaintiff was released from the 121st Precinct approximately three hours later before midnight on July 8th with a summons. He did not seek medical attention of any kind at any point for any injury sustained in this incident.

Plaintiff was arrested for criminal possession of a weapon in the 4th degree in violation of Penal Law § 265.01(1) and operation of a vehicle with nontransparent windows in violation of Vehicle and Traffic Law § 375 (12)(a). He was arraigned for criminal possession of a weapon in the 4th degree for possession of a gravity knife. Plaintiff made several court appearances until the charges against him were dismissed on motion of the district attorney. As plaintiff admits,

plaintiff's charge was dismissed following plaintiff's passenger's acceptance of an adjournment in contemplation of dismissal in satisfaction of an identical charge for criminal possession of a weapon resulting from possession of the gravity knife in plaintiff's vehicle.

Legal Argument[2]

Plaintiff brings causes of action for false arrest, Fourth and Fourteenth Amendment violations based on his illegal arrest, malicious prosecution, and municipal liability pursuant to a *Monell* theory premised generally upon an alleged custom or policy of falsely arresting individuals and failure to train officers to stop falsely arresting individuals. Defendants deny the allegations and contend that plaintiff failed to state a claim given the undisputed facts.

The presence of probable cause is a complete defense to an action for false arrest. *Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004). "Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (*citing O'Neill v. Town of Babylon*, 986 F.2d 646, 650 (2d Cir. 1993)). Probable cause requires only a probability, not an actual showing, of criminal activity. *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983); *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997). Most importantly, "the existence of probable cause to arrest—even for a crime other than the one identified by the arresting officer—will defeat a claim of false arrest under the Fourth Amendment. *Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016) (citing *Devenpeck v. Alford*, 543 U.S. 146, 152-54 (2004)). "A claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) (citing *Devenpeck*, 543 U.S. 146, 153-54; *see also Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007) ("[A]n arrest is not unlawful so long as the officer has knowledge of, or reasonably trustworthy information as to, facts and circumstances sufficient to provide probable cause to believe that the person arrested has committed any crime."). This includes arrests for very minor offenses committed in the presence of the officer. *See Nieves v. Bartlett*, 139 S.Ct. 1715, 1728 (2019) (*citing Atwater v. City of Lago Vista*, 532 U.S. 318 (2001)).

Here, plaintiff admits that he voluntarily obtained dark tints on the windows of his vehicle that he knew to be impermissible at the time he obtained them, yet obtained them anyway. The tints were immediately recognizable to Officer Smith after plaintiff turned and drove in front of his police vehicle twice in a short period while the sun was still up. Plaintiff does not dispute that his side windows were partially up and his rear windshield was tinted and in a fixed position. Plaintiff also does not dispute that he possessed the folding knife in the glove box of his vehicle, which he purchased and intentionally kept in his vehicle. He admits the knife

---

[2] In the interests of brevity, Defendants do not include a lengthy legal analysis of plaintiff's municipal liability claim, given the vagueness of the claim in general. However, Defendants intend on moving for summary judgment on this claim. Defendants mention but do not include a lengthy analysis of qualified immunity, though intend to do so in a fully-briefed motion for summary judgment. Defendants also do not include an excessive force analysis, as such a claim is not specifically pled or even mentioned in the complaint.

is a weapon, has a knob on its blade, and has a lever to lock an opened blade into place. He admits he opened the glove box to retrieve his paperwork, thus allowing the officers to observe the knife in the glove box prior to arresting him. Considering plaintiff's admissions, the undisputed facts establish that probable cause existed to stop plaintiff's vehicle and subsequently arrest him, regardless of whether the officers initially considered exercising their discretion to allow plaintiff to leave prior to the altercation with plaintiff's passenger.

Regarding plaintiff's corresponding claims of illegal search, the Supreme Court has held that when an officer lawfully arrests "the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile" and any containers therein. *Arizona v. Gant*, 556 U.S. 332 (2009) *citing New York v. Belton*, 453 U.S. 454 (1981). Police may search incident to arrest, without a warrant, the space within an arrestee's "immediate control", including "the area from within which he might gain possession of a weapon…" *Chimel v. California*, 395 U.S. 752, 763 (1960). The Supreme Court has also held that officers may search an automobile without a warrant so long as they have probable cause to do so, such as when there is probable cause to believe a vehicle contains evidence of criminal activity. *Collins v. Virginia*, 584 U.S. (2017), *citing California v. Carney*, 471 U.S. 386 (1985); *United States v. Ross*, 456 U.S. 798, 820-21 (1982). Here, the officers had probable cause to believe plaintiff's vehicle contained evidence of criminal activity when they observe a weapon in the glove box. Combined with plaintiff's admitted violation of the vehicle and traffic law, his admitted arguments with the officers upon being pulled over, and his admissions that his passenger first unexpectedly left the vehicle and then re-entered and used the vehicle to resist arrest while in the immediate vicinity of the glove box, the officers had probable cause to search plaintiff's glove box incident to his and his passenger's lawful arrests and based on their plain-view observation of a potential weapon in the glove box at the time of his arrest. Again, it is irrelevant whether the officers initially considered exercising their discretion to allow plaintiff to leave prior to searching his vehicle. *United States v. Dupree*, 2019 U.S. App. LEXIS 12560 at *3 (2d Cir. 2019) (*citing United States v. Diaz*, 854 F.3d 197, 207 (2d Cir. 2017) (holding that a search incident to arrest may be lawful "regardless of whether or not the officer intended to [make an arrest] prior to the search.")).

Similarly, it is also well-settled that "[B]ecause lack of probable cause is a necessary element, the existence of probable cause is a complete defense to a claim of malicious prosecution." *Ziming Shen v. City of New York*, 725 F. App'x 7, 12 (2d Cir. 2018) (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)). "Under both Section 1983 and New York State law, a plaintiff is required to demonstrate: (i) the commencement or continuation of a criminal proceeding against her; (ii) the termination of the proceeding in her favor; (iii) that there was no probable cause for the proceeding; and (iv) that the proceeding was instituted with malice." *McDonough v. Smith*, 898 F.3d 259, 268 n.10 (2d Cir. 2018). Such claims additionally require "a seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016). The law imposes "a heavy burden on malicious prosecution plaintiffs", and plaintiff's failure to establish any these elements is fatal to his claim. *See Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004); *see also Angevin v. City of New York*, 204 F. Supp. 3d 469, 480 (E.D.N.Y. 2016).

Furthermore, the Second Circuit's recent decision in *Lanning v City of Glen Falls* explicitly broke from the test for favorable termination derived from New York State law, rejecting the long-standing New York State law definition and instead relied on its own decision in *Singleton* as it defined the element of favorable termination in malicious prosecution claims. *See Lanning v. City of Glen Falls*, 908 F.3d 19, 25 (2d Cir. 2018). The Second Circuit noted that "[u]nder the common law, . . . it is well-established that an accused, in order to maintain a cause of action for malicious prosecution, must establish that the state prosecution terminated in his favor," and that "[p]roceedings are 'terminated in favor of the accused' only when their final disposition is such as to indicate the accused is not guilty." *Singleton v. City of New York*, 632 F.2d 185, 194-95 (2d Cir. 1980); *see also Southerland v. Garcia*, 2012 U.S. App. LEXIS 10020, at *6 (2d Cir. 2012); *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995) ("In the absence of a decision on the merits, the plaintiff must show that the final disposition is indicative of innocence."). "[W]here a dismissal…leaves the question of guilt or innocence unanswered, it cannot provide the favorable termination required" as the basis for a claim for malicious prosecution. *Lanning*, 908 F.3d at 28; *see also Stora v. City of New York*, 2019 U.S. Dist. LEXIS 66638 at *14 (E.D.N.Y. Apr. 18, 2019) ("under federal law, the plaintiff must demonstrate that termination affirmatively indicates his innocence.")

In the instant matter, probable cause existed to prosecute plaintiff based on his possession of the gravity knife in his vehicle. Additionally, plaintiff describes in both his complaint and his deposition that his charges for possession of the gravity knife were dismissed after his passenger accepted an ACD in satisfaction of the same charge, which is also supported by documentation from the criminal court. As a result, the dismissal does not affirmatively indicate that plaintiff was innocence, as possession may be joint and plaintiff may have been convicted had the prosecution against him continued. Thus, plaintiff cannot satisfy all elements of this claim.

Lastly, it must be noted that qualified immunity is a broad legal shield that protects officers from liability if "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Coggins v. Buonora*, 776 F.3d 108, 114 (2d Cir. 2015) (*quoting Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996)) (*citing Malley v. Briggs*, 475 U.S. 335, 344-45 (1986)). This "demanding standard" "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *District of Columbia v. Wesby*, 138 S. Ct 577, 590 (2018). Here, the officers are entitled to qualified immunity, as at least arguable probable cause to arrest, search, and prosecute existed.

Accordingly, Defendants respectfully request a pre-motion conference in anticipation of Defendants' motion for summary judgment. Defendants request thirty days to fully brief their motion for summary judgment following a pre-motion conference, with thirty days for plaintiff to oppose, and finally, two weeks for Defendants to reply to plaintiff's opposition.

Respectfully Submitted,

/s/
Frank A. DeLuccia
Assistant Corporation Counsel

FAD/m
cc: All Counsel (by ECF)