UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PEDRO CRUZ,

               Plaintiff,

    -against-

THE CITY OF NEW YORK, POLICE OFFICER RYAN SMITH, SERGEANT CHRISTOPHER FLAHERTY, SSA JOHN TODARO, JOHN DOES 1-3,

               Defendants.

**MEMORANDUM & ORDER**
**18-CV-5584 (NGG) (RLM)**

NICHOLAS G. GARAUFIS, United States District Judge.

After a vehicle stop on Staten Island in July 2017, Plaintiff Pedro Cruz was arrested for criminal possession of a weapon, a gravity knife, and for excessive window tinting on his car. All charges were eventually dropped. Mr. Cruz brought this suit under 42 U.S.C. § 1983 against Police Officer Ryan Smith, other named and unnamed officers, and the City of New York, alleging false arrest, false imprisonment, and malicious prosecution in violation of his Fourth Amendment rights, as well as related state claims. (*See* Compl. (Dkt. 1).) Defendants now move for summary judgment arguing, *inter alia*, that Officer Smith had probable cause to stop and arrest Mr. Cruz, which is a complete defense to his claims. (*See* Defs.' Mem. in Supp. of Mot. for Summ. J. ("Mem.") (Dkt. 25); Pl.'s Mem. in Opp. to Summ. J. ("Opp.") (Dkt. 27); Defs.' Reply ("Reply") (Dkt. 30).) For the following reasons, Defendants' motion is GRANTED and the complaint is DISMISSED with prejudice.

**I.  BACKGROUND**

The court constructs the following statement of facts from the parties' Local Rule 56.1 Statements and the admissible evidence submitted. (*See* Defs.' Rule 56.1 Statement of Undisputed Facts

1

("56.1") (Dkt. 24); Pl.'s Rule 56.1 Statement ("56.1 Resp.") (Dkt. 28); Defs.' Reply to Pl.'s Rule 56.1 Statement ("56.1 Reply") (Dkt. 31).) Except where otherwise noted, the following facts are undisputed. Where the parties allege different facts, the court notes the dispute and credits the Plaintiff's version if it is supported by evidence in the record. All evidence is construed in the light most favorable to the non-moving party with all "reasonable inferences" drawn in its favor. *ING Bank N.V. v. M/V Temara, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018).[1]

On July 8, 2017, at approximately 8:00 pm, Mr. Cruz was driving his car, a silver four-door 2017 Infinity Q50 sedan, down Van Pelt Avenue in Staten Island towards Richmond Terrace. (56.1 ¶¶ 1, 10.) Mr. Cruz's friend Justin Rodriguez was in the passenger seat. (*Id.* ¶ 11.) Defendant Police Officer Ryan Smith and Police Officer Joseph Perfetto were on duty in plain clothes, in an unmarked police vehicle on Richmond Terrace. (*Id.* ¶ 13.) At the intersection, Mr. Cruz made a left turn onto Richmond Terrace. (*Id.* ¶ 19.) His windows were partially rolled down. (*Id.* ¶ 21.) The weather was clear and it was still light outside. (*Id.* ¶ 14.) As Mr. Cruz turned, Officer Smith observed tinting on Mr. Cruz's windows and rear windshield that he believed to be illegal. (Tr. of Smith Dep. (Dkt. 26-3) at ECF pp. 15-16.) Mr. Cruz later testified that he had the tints installed earlier that year at a facility on Staten Island. (56.1 ¶¶ 4-8.) At that time, an employee of the facility told him that the tints were darker than the legal limit and would not pass inspection. (*Id.*) Subsequent testing showed that the front passenger window was tinted 30% (*i.e.* 70% light transmittance,) and the rear 17%. (*Id.* ¶¶ 88-89.) The legal limit for window tints under the New York Vehicle and Traffic Law ("VTL") is 70% light transmittance. *See* VTL § 375(12-a)(b).

---

[1] When quoting cases and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

2

Officer Smith began to follow Mr. Cruz, who then turned onto Union Avenue. (56.1 ¶¶ 25-28.) As he turned, Officer Perfetto observed that he could not see through the window tints into Mr. Cruz's vehicle and concluded that they were too dark, as his partner had. (*Id.* ¶ 32.) Officer Smith engaged his lights and sirens and Mr. Cruz pulled over; the police vehicle stopped one car length behind. (*Id.* ¶¶ 34-36.)

Officers Smith and Perfetto exited their vehicle and approached the driver's and passenger's side, respectively. (*Id.* ¶¶ 38-39.) As they did, Mr. Rodriguez exited the car from the passenger's side and Officer Perfetto placed his hand on the passenger's door, positioning his body to keep Mr. Rodriguez from fleeing. (*Id.* ¶¶ 40-42.) Mr. Rodriguez remained standing in the space between the open front passenger door, the vehicle, and Officer Perfetto. (*Id.* ¶ 43.) According to Defendants, Mr. Cruz then retrieved his license, registration, insurance paperwork, and an NYPD Police Benevolence Association card. (*Id.* ¶ 44.) While gathering the materials, Mr. Cruz opened his glove compartment. (*Id.* ¶ 45.) Mr. Cruz disputes that sequence of events. He testified in his deposition that he had opened and shut his glove compartment and retrieved his documents before the officers arrived at his car. (*See* Tr. of Pl. Dep. (Dkt. 29-2) at ECF pp. 72:22 – 73:5.)[2]

---

[2] In a declaration dated March 5, 2020—one day before Mr. Cruz served his 56.1 Response and months after Defendants served their 56.1 statement and brief in support of their motion—Mr. Cruz alleges that he opened and closed his glove compartment before any officer was present, which would have made it impossible for Officer Perfetto to observe the contents of the glove compartment when he alleged. (*See* Decl. of Pl. (Dkt. 29-1) ¶ 13.) Under the "sham issue of fact" doctrine, Mr. Cruz cannot avoid summary judgment "by submitting an affidavit that contradicts the party's previous sworn testimony." *In re Fosamax Prods. Liab. Litig.*, 707 F.3d 189, 193 (2d Cir. 2013). However, the court credits Mr. Cruz's prior deposition testimony that he had already retrieved his insurance documents from the

3

According to Defendants, Officer Perfetto observed a black folding knife in Mr. Cruz's glove compartment. (56.1 ¶¶ 46, 49.) Officers Perfetto and Smith testified that Perfetto notified Smith about the knife in the glove compartment, either by "a simple look" or by "mouth[ing] the word knife," but Officer Smith did not see the knife himself at that point. (*See* Tr. of Smith Dep. (Dkt. 26-3) at ECF pp. 24:11-26:7; Tr. of Perfetto Dep. (Dkt. 26-4) at ECF pp. 47:22-48:13.)

Officer Smith collected Mr. Cruz's documents, as well as Mr. Rodriguez's identification, and returned to the police car. (56.1 ¶¶ 54-56.) Upon running the information, Officer Smith discovered that there was an open warrant for Mr. Rodriguez's arrest. (*Id.* ¶ 61.) He returned to the vehicle and informed Mr. Cruz that he had been pulled over because of the dark tints on his windows. (*Id.* ¶ 63.) The officers then attempted to place Mr. Rodriguez under arrest. (*Id.* ¶ 64.) Mr. Rodriguez was still standing outside of the car by the front passenger door. (*Id.* ¶ 65.) When the officers attempted to place him in handcuffs, Mr. Rodriguez sat into the front passenger seat and used his arms and legs to brace himself inside of the vehicle while yelling, refusing to exit. (*Id.* ¶¶ 66-71.) The officers called for backup who soon arrived but, after approximately two minutes, they were able to remove Mr. Rodriguez from the vehicle. (*Id.* ¶¶ 73-76.) Officers Smith and Perfetto recovered a folded black knife from the glove compartment, adjacent to where Mr. Rodriguez had been sitting, which Officer Smith recognized as a gravity knife that opens by applying centrifugal force with the flick of a wrist. (*See* Tr. of Smith Dep. at ECF pp. 32:9-36:16.)

As Officers Smith and Perfetto removed Mr. Rodriguez, another unnamed officer ordered Mr. Cruz out of the vehicle. (56.1 ¶ 77.)

---

center console, after checking the glove compartment and shutting it, when the officers arrived.

4

When Mr. Cruz asked why, the officer removed him by his arm, put him onto the ground, and handcuffed him. (*Id.* ¶¶ 78-81.) He was placed in a police car and transported to the 121st Precinct. (*Id.* ¶ 83.) The arrest report for Mr. Cruz states that he was observed driving with excessive window tints and that officers "observed [a] gravity knife in plain view in [his] glove compartment." (*See* Arrest Report (Dkt. 26-7) at 1.) He was released from the Precinct around midnight and given a Desk Appearance Ticket. (56.1 ¶ 92.)

On September 19, 2018, Mr. Cruz and Mr. Rodriguez appeared in New York City Criminal Court and were both charged with one count of criminal possession of a weapon in the fourth degree, for possession of a gravity knife, in violation of Penal Law § 265.01(1). (56.1 ¶¶ 93-95.) Mr. Rodriguez accepted an adjournment in contemplation of dismissal on his charge, at which point the District Attorney moved to dismiss the charge against Mr. Cruz, which the court granted. (*Id.* ¶ 95; Tr. of Criminal Ct. Hr'g (Dkt. 26-10) at 4.) On October 5, 2018, Mr. Cruz filed this lawsuit pursuant to Section 1983, alleging violations of his rights under the Fourth Amendment of the U.S. Constitution and under the New York State Constitution. (*See* Compl. ¶¶ 23, 46.)

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried. In determining whether summary judgment is appropriate, this court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011). "A 'material' fact is one capable of influencing the case's outcome under governing

substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." *Figueroa v. Mazza*, 825 F.3d 89, 98 (2d Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The movant may discharge its initial burden by demonstrating that the non-movant "has 'failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 255 F. Supp. 3d 443, 451 (S.D.N.Y. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). While the court must draw all inferences in favor of the non-movant, the non-movant "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995).

### III. DISCUSSION

#### A. Parties and Claims

As an initial matter, the court addresses Mr. Cruz's claims as to named Defendants other than Officer Smith, and the causes of action enumerated in the Complaint other than those for false arrest, false imprisonment, and malicious prosecution.

##### 1. Sergeants Flaherty and Todaro

To be held liable under Section 1983, a defendant must have been personally involved in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). "An officer's mere presence at the scene of a stop or arrest generally does not constitute sufficient personal involvement for § 1983 liability." *Snead v. City of New York*, 463 F. Supp. 3d 386, 399 (S.D.N.Y. 2020). Mr. Cruz has not pleaded any facts to suggest that either Sergeant Flaherty or SSA Todaro was personally involved in the alleged constitutional tort. Sergeant Flaherty's only involvement appears to be his signature as a deponent on the complaint filed

in Criminal Court (*see* Criminal Compl. (Dkt. 26-9)). SSA Todaro's only involvement is as the "Supervisor Approving" signature on the arrest report, filed by Officer Perfetto and listing Officer Smith as the Arresting Officer. (*See* Arrest Report at 3.) There is no pleading to link Flaherty or Todaro to the alleged false arrest or malicious prosecution, or even an allegation that they were physically at the scene, and therefore all claims against them must be dismissed. *See Wong v. Yoo*, 649 F. Supp. 2d 34, 61 (E.D.N.Y. 2009) ("Personal involvement may be established by a showing of direct participation, meaning intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal . . . [or] where police officers fail to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.")

### 2. Municipal Liability

Mr. Cruz alleges two theories of liability applicable to Defendant New York City: first, that the City is liable for the actions of its employee police officers under the doctrine of *respondeat superior*; and second, that the City "failed to take steps necessary to discipline, train, supervise or otherwise correct the improper, illegal conduct of the individual defendants in this and in similar cases involving misconduct." (Compl. ¶¶ 13, 29). The first theory fails because municipalities "cannot be made liable by application of the doctrine of *respondeat superior*" in Section 1983 cases. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986). The second theory— so-called *Monell* liability after *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)—requires a plaintiff "to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). For *Monell* liability premised on a municipality's failure to train its employees, a plaintiff must show "deliberate indifference." *Id.* Mr. Cruz has not plead anything upon which

7

the court could conclude that constitutional violations by the NYPD officers involved in his arrest are attributable to the City of New York. The extent of his argument is the conclusory and factually bare allegation that the City failed "to discipline, train, supervise or otherwise correct" a pattern of practice. Accordingly, the claims as applied to Defendant New York City must be dismissed.

### 3. Duplicative Claims

Mr. Cruz's Complaint contains five causes of action for: (1) "False Arrest and Illegal Imprisonment"; (2) "Municipal Liability"; (3) "Fourth Amendment"; (4) "Fourteenth Amendment"; and (5) "Malicious Prosecution". (Compl. ¶¶ 21-47.) As pleaded, the Complaint misstates the nature of claims brought under Section 1983. False arrests, false imprisonments, and malicious prosecutions all violate an individual's Fourth Amendment right to be free from unreasonable searches and seizures. *See Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116-18 (2d Cir. 1995). Section 1983 provides Mr. Cruz "a method for vindicating federal rights" conferred to him by the Fourth Amendment. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). He does not have a Fourth Amendment claim independent of his claims for false arrest[3] and malicious prosecution. Mr. Cruz also does not possess any independent cause of action under the Fourteenth Amendment, which is relevant to his case only insofar as it makes Fourth Amendment protections applicable to the states. *See id.* at 272-275. Thus, properly construed, Mr. Cruz brings two causes of action pursuant to Section 1983 alleging violations of his Fourth Amendment rights: one for false arrest and false imprisonment, and one for malicious prosecution.

---

[3] "In New York, the tort of false arrest is synonymous with that of false imprisonment." *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991).

8

### B. False Arrest and False Imprisonment

False arrest claims under Section 1983 follow the law of the state where the arrest occurred. *See Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007). Under New York law, to establish a cause of action for false arrest or false imprisonment a plaintiff must show: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Broughton v. State*, 37 N.Y.2d 451, 456 (1975). Only the fourth element is at issue in this case. Defendants claim that Officer Smith had probable cause to arrest Mr. Cruz, which "is a complete defense to an action for false arrest." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).

"Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer*, 63 F.3d at 119. "A Fourth Amendment claim turns on whether probable cause existed to arrest for any crime, not whether probable cause existed with respect to each individual charge." *Marcavage v. City of New York*, 689 F.3d 98, 109 (2d Cir. 2012).

Here, Mr. Cruz was indisputably and knowingly driving a car in violation of VTL § 375(12-a)(b), which was immediately recognized by the officers based on their professional experience and which, in turn, provided probable cause for his arrest. *See Pinto v. City of New York*, 15-cv-9696 (CM), 2017 WL 5508917, at *4 (S.D.N.Y. Mar. 2, 2017); *see also United States v. Scopo*, 19 F.3d 777, 782 (2d Cir. 1994) (holding that officers had probable cause to stop and arrest a driver for changing lanes without signaling because, "[w]hen an officer observes a traffic offense—however minor—he has probable cause to stop the driver of the vehicle."). To be sure, the Supreme Court has recognized that Section 1983

9

liability might exist, despite probable cause, in the "narrow" circumstance "where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019). Those situations are the exception to the general rule that probable cause is a complete privilege to a false arrest claim. *Id. Nieves* applies where the decision to selectively enforce a minor law evidences a "retaliatory animus" on an arresting officer's part, which can defeat the privilege. *Id.* at 1727-28. Mr. Cruz has not pleaded any facts to that end here.

Moreover, Mr. Rodriguez's conduct once the vehicle was stopped provided the police with a basis to search Mr. Cruz's glove compartment where, undisputedly, they found an illegal gravity knife.[4] Mr. Rodriguez immediately attempted to flee when Mr. Cruz was pulled over, and he actively resisted when officers attempted to put him under arrest based on his open warrant. Under the search-incident-to-arrest doctrine, "a search may be made of the area within the control of the arrestee" without a search warrant. *United States v. Robinson*, 414 U.S. 218, 224 (1973). When arresting a person who was recently in a vehicle, police may search a closed compartment if "the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Arizona v. Grant*, 556 U.S. 332, 351 (2009). In these circumstances, where Mr. Rodriguez attempted to flee and then physically braced himself inside of the

---

[4] In May 2019, Penal Law § 265.01 was amended after a judge in the Southern District of New York found the statute void for vagueness as applied to gravity knives. *See Cracco v. Vance*, 376 F. Supp. 3d 304 (S.D.N.Y. 2019); 2019 N.Y. Sess. Laws Ch. 34 (A. 5944) (McKinney). At the time of Mr. Cruz's arrest in July 2017, possession of a gravity knife was still a crime under the statute. *See Copeland v. Vance*, 893 F.3d 101, 107 (2d Cir. 2018).

front passenger seat and became angry with the arresting officers, it was reasonable for the officers to search the glove compartment, which was within his immediate reach. That lawful search yielded an illegal gravity knife and therefore provided probable cause to arrest Mr. Cruz on the criminal possession of a weapon charge, in addition to and independently of the traffic violation.

Whether Officer Perfetto observed the gravity knife in plain view when Mr. Cruz opened the glove compartment is a disputed point of fact that cannot serve as the basis for summary judgment. However, because the court finds that there was probable cause due to Mr. Cruz's violation of the VTL and based on the fruit of a lawful search of the glove compartment, that dispute is immaterial.

### C. Malicious Prosecution

To prevail on a claim for malicious prosecution under Section 1983, a plaintiff must show: "(1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice and, (4) the matter terminated in plaintiff's favor." *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). The elements are the same under New York law. *See Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983). For the reasons stated above, there was probable cause to prosecute Mr. Cruz for possession of a gravity knife and therefore his claim for malicious prosecution fails.

Because probable cause is a complete defense under both federal and New York law, the court does not consider whether the District Attorney's motion to dismiss the charge against Mr. Cruz was an adequate "favorable termination," which federal and New York law define differently. *Compare Cantalino v. Danner*, 96 N.Y.2d 391, 395 (2001) (holding that a dismissal, over a prosecutor's objection, was "not inconsistent with innocence" and

11

could support a malicious prosecution claim); *with Lanning v. City of Glens Falls*, 908 F.3d 19, 27-28 (2d Cir. 2018) (declining to apply New York law and holding that a dismissal which "leaves the question of guilt or innocence unanswered . . . cannot provide the favorable termination required" for a malicious prosecution claim under Section 1983).

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Dkt. 23) is GRANTED with prejudice. The Clerk of the Court is respectfully DIRECTED to enter judgment for Defendants and close the case.

SO ORDERED.


Dated:   Brooklyn, New York
         April 26, 2021

                                             /s/ Nicholas G. Garaufis
                                            NICHOLAS G. GARAUFIS
                                            United States District Judge